UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

IN RE )
) Bankruptcy Case
GERALD WILSON COLEN, JR. and ) No. 13-60563-tmr7
PAULA DIANNE COLEN, )
)
                Debtors. )
)
JOSEPH M. CHARTER, Trustee, ) Adversary Proceeding
) No. 13-6109-tmr
                Plaintiff, )
)
   v. )
)
KEN KEARNEY and ) MEMORANDUM OPINION
KEARNEY HOLDINGS, LLC, )
)
                Defendants. )

This matter comes before the Court on Defendants' motion for partial summary judgment.

Procedural History:

Gerald and Paula Colen (**Debtors**) filed a Chapter 7 petition on February 27, 2013. Trustee Joseph Charter filed the instant adversary proceeding on August 20, 2013. After an unopposed motion, and order entered thereon, he filed an Amended Complaint against Kearney Holdings, LLC (**Holdings**) and Ken Kearney (**Kearney**). The Amended Complaint asserts three (3) Claims for Relief. The First Claim is to avoid the transfer of a 1999 Avion 5th Wheel trailer as actually and constructively fraudulent under 11 USC §§ 548 and 550. The Second Claim is to recover a $5,000 "non-refundable move in fee" under the Oregon Residential Landlord and Tenant Act (**ORLTA**). The Third Claim is for a declaration that, except for the

MEMORANDUM OPINION-1

unenforceable fee provision, a ten (10) year lease of a 1998 Fleetwood manufactured home (**the Fleetwood**) between Debtors and Defendants, is valid and enforceable.

Defendants answered, denying the material allegations and alleging nine (9) affirmative defenses. They also filed a Counterclaim for attorney fees incurred in defending against the Second and Third Claims. Plaintiff replied to the Counterclaim denying the material allegations.

At a January 30, 2014, pre-trial conference, the parties agreed the Court has jurisdiction and may enter a final judgment on all claims herein. There was a colloquy as to whether Plaintiff needed to join Debtors as defendants on his Third Claim. The parties were given twenty-one (21) days to submit a stipulation or some other document regarding case status.

On February 28, 2014, a stipulated order was entered, wherein the parties consented to the Court entering a final judgment on all claims. The stipulated order contains a "core" finding. It dismisses the Third Claim, and in light thereof, provides that Defendants' fourth [sic] affirmative defense is rendered moot.[1]

After a failed settlement conference, Defendants filed the instant motion, seeking summary judgment on Plaintiff's Second Claim and on their Counterclaim. The motion is supported by a memorandum, concise statement of material facts, and a Declaration by Ken Kearney, with attached exhibits.[2] Plaintiff responded to the motion.[3] Defendants replied. No party has requested oral argument. The motion is ripe for decision.

Facts:

---

[1] This was an inadvertent error. In actuality, the third affirmative defense was rendered moot. To correct the error, the stipulated order will be amended by order entered in conjunction with resolution of the instant motion.

[2] All exhibits referenced herein are those submitted as attachments to Kearney's Declaration.

[3] Plaintiff did not, however, respond to Defendants' concise statement, LBR 7056-1(b)(1), or file his own concise statement. LBR 7056-1(b)(2). The consequences of such failure is his deemed admission of all the properly supported facts set forth in Defendants' concise statement. LBR 7056-1(f).

MEMORANDUM OPINION-2

Kearney is Holding's sole member and manager. On March 16, 2012, Debtors signed at least two documents. One was a lease of the Fleetwood, with Holdings as landlord and Debtors as tenants (**Lease**). The other was a "Lease to Purchase Option Agreement" (**Option**).

The Lease was for a ten (10) year term beginning April 1, 2012. It provided under the heading "Rent":[4]

> The total lease due for the term hereof is the sum of 120 consecutive monthly timely lease installments of $200.00 DOLLARS ($24,000.00) plus a **$5,000.000 nonrefundable move in fee** payable on signing, for a total lease amount of ($29,000.00) payable on the 1st day of each month of the term after receiving the nonrefundable move in fee of $5,000.00, [i]n equal consecutive monthly lease installments of $200.00 DOLLARS per month, first installments [sic] to be paid upon execution of this Agreement, the second installment to be paid on May [] 1st., 2012.

Ex. D-2 at p.3 (underlined emphasis in original; bolded emphasis added). The Lease did not otherwise describe the "nonrefundable move in fee." It contained an integration clause. Ex. D-2 at p.9. It also included an attorney fee clause. Ex. D-2 at p.8. Under the heading "ADDITIONAL PROVISIONS; DISCLOSURES," it listed various documents, including the Option. Ex. D-2 at p.10.

The Option allowed Debtors to purchase the Fleetwood at the end of the lease term (between March 1, 2022 and April 30, 2022) for $12,500. Ex. D-3 at pp.1-2. The consideration for the option to purchase was described as "**a non-refundable fee of $5,000.**" Ex. D-3 at p.1 (emphasis added). If Debtors timely exercised the option, they would be entitled to a credit of $62.50 for every timely lease payment (120 x $62.50=$7,500) plus the $5,000 move-in fee, against the $12,500 purchase price.[5] The Option further provided that if Debtors accept the Option and "pay[] all lease/rent payments on the first of the month due and no late fees are assessed . . . [they] shall pay a total lease of $29,000.00," and that if Debtors accept by

---

[4] The Lease contained a provision stating the descriptive headings are "for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant." Ex. D-2 at p.9.

[5] Thus, if Debtors performed the Lease and Option without default, they would have earned as a credit the entire $12,500 purchase price.

MEMORANDUM OPINION-3

signing the Option, they agree to pay the $29,000.00 by first making a "**$5,000.00 nonrefundable move in fee** payment" and then the 120 monthly $200 payments. Ex. D-3 at p.2 (emphasis added). It provided that upon default, Holdings may terminate the Option, and, if terminated, Debtors "shall lose entitlement to any refund of the [monthly] installments or nonrefundable move in fee." Ex. D-3 at p.3. Like the Lease, it contained an integration clause. Ex. D-3 at p.4.

Debtors paid the $5,000 to Holdings by check on March 30, 2012, indicating "move in fee" on the check's memo line. Kearney, on behalf of Holdings, then accepted the terms of the Lease and Option. In and around April 1, 2012, Debtors moved into the Fleetwood.

As noted above, on February 27, 2013, Debtors filed their Chapter 7 petition. On their § 521 statement of intention, they listed the Lease and indicated an intent to assume it under § 365(p)(2). On Schedule G, they listed a "10 year lease with option to buy." On Schedule B, they listed a "deposit" with "Kearney Holdings LLC," owned jointly with a value of $5,000. On Schedule C, Debtor Gerald Colen claimed $2,250 and Debtor Paula Colen claimed $2,750 of the deposit exempt under ORS 18.395 (the Oregon homestead exemption). On April 10, 2013, Debtors amended Schedule C to exempt a "**security deposit**" of $2,500 each, again under the Oregon homestead exemption (emphasis added). No party in interest objected to either the original or amended exemption claims.

Debtors timely paid their $200 monthly lease payments until they moved out of the Fleetwood on March 21, 2014.

Summary Judgment Standards:

On a motion for summary judgment, the moving party has the burden to show "that there is no genuine dispute as to any material fact and . . . [he] is entitled to judgment as a matter of law." FRCP 56(a) (made applicable by FRBP 7056). The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Material facts are such facts as might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "A dispute about a material fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

MEMORANDUM OPINION-4

FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248). No genuine factual issue exists for trial where a nonmoving party rests on mere allegations or denials, Malmquist v. OMS Nat'l Ins., Co., 2011 WL 3298900, *3 (D. Or. June 14, 2011), or merely shows "some metaphysical doubt." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

With regard to its own claims or defenses, i.e., those elements for which the moving party bears the burden of proof at trial, the movant "must support its motion with . . . evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S. Ct. 2548, 2557 (1986) (Brennan, J.) (dissent). There must be more than a "scintilla," Anderson, 477 U.S. at 252, 106 S. Ct. at 2512, indeed the evidence must be "significantly probative." Id. at 249–250, 106 S. Ct. at 2511. If the movant makes the requisite affirmative showing, the burden of production shifts to the nonmoving party to produce significant probative evidence that demonstrates the existence of a "genuine issue" for trial. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quotation omitted).

With regard to a motion attacking the opposing party's claims or defenses, i.e., those for which the nonmovant has the burden of proof at trial, and assuming sufficient time for discovery, the movant may discharge his Rule 56 burden in two ways. He may submit evidence affirmatively negating elements of the nonmoving party's claims or defenses (method one), or he may affirmatively demonstrate (other than by a conclusory statement) that the nonmoving party's evidence is insufficient to establish an essential element of its claim (method two), Celotex, 477 U.S. at 331, 106 S. Ct. at 2557 (Brennan, J) (dissent), as there is "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar material *negating* the opponent's claim." Id. at 323, 106 S. Ct. at 2553 (majority opinion) (emphasis in original). Once the moving party has met its burden of production under either method,[6] the burden shifts to

---

[6] If the moving party attempts to use method two, the nonmoving party may also call the court's attention to evidence already in the record that the movant has overlooked or ignored. In that event, the
(continued...)

the nonmoving party to produce "evidence sufficient to sustain a jury verdict on those issues for which it bears the burden at trial." Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 1421, 1435 (9th Cir. 1995) (internal quotation omitted). "[E]vidence of an essential element is sufficient to defeat summary judgment only if a jury reasonably could infer from that evidence the existence of that element." Miller v. Gilliam (In re Gilliam), 2012 WL 1191854, *7 (9th Cir. BAP April 6, 2012). The evidence must be significantly probative. Anderson, 477 U.S. at 249-250, 106 S. Ct. at 2511. And, when the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (quoting Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998)).

All reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party, Crosswhite v. Jumpking, Inc., 411 F. Supp.2d 1228, 1230 (D. Or. 2006), and all rational or reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631. "When different ultimate inferences can be reached, summary judgment is not appropriate." Simone v. Manning, 930 F.Supp. 1434, 1436 (D. Or. 1996). In deciding a motion for summary judgment, the court should neither make credibility determinations, nor weigh the evidence. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513.

Discussion:

Defendants seek summary judgment on Plaintiff's Second Claim as well as their Counterclaim.

Second Claim:

The Second Claim is brought under ORLTA. More particularly, it is based on ORS 90.302(1),[7] which provides:

---

[6](...continued)
moving party must respond by making an attempt to demonstrate the inadequacy of this evidence, for it is only by attacking the entire record allegedly supporting the nonmoving party that a moving party satisfies Rule 56's burden of production. Celotex, 477 U.S. at 332, 106 S. Ct. at 2557 (Brennan, J.) (dissent).

[7] Under ORS 90.125(2), "any right or obligation declared by . . . [the ORLTA] is enforceable by action unless the provision declaring it specifies a different and limited effect."

MEMORANDUM OPINION-6

A landlord[8] may not charge a fee[9] at the beginning of the tenancy[10] for an anticipated landlord expense and may not require the payment of any fee except as provided in this section.[11] A fee must be described in a written rental agreement.[12]

---

[8] In pertinent part:

> "Landlord" means the owner, lessor or sublessor of the dwelling unit or the building or premises of which it is a part.

ORS 90.100(22) (2011) (renumbered ORS 90.100(24), effective June 18, 2013. Or Laws 2013, ch. 443, § 1).

> "Dwelling unit" means a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household.

ORS § 90.100(11) (2011) (renumbered ORS 90.100(12), effective June 18, 2013. Or Laws 2013, ch. 443, § 1).

[9] "'Fee' means "a nonrefundable payment of money." ORS 90.100(15) (2011) (renumbered ORS 90.100(16), effective June 18, 2013. Or Laws 2013, ch. 443, § 1).

[10] ORLTA does not define "tenancy." However, "tenant" in pertinent part, "[m]eans a person, including a roomer, entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." ORS 90.100(45)(a)(A) (2011) (renumbered ORS 90.100(47)(a)(A), effective June 18, 2013. Or Laws 2013, ch. 443, § 1).

[11] Defendants concede the statute does not list a "move in fee" as a permitted fee. See ORS 90.302(2) (2011); ORS 90.302(2),(3) (2013) (amending list of permitted fees, effective Jan. 1, 2014. Or Laws 2013, ch. 294, § 8). However, they dispute the $5,000 "fee" at bar comes within the statute's ambit.

[12]
> "Rental agreement" means all agreements, written or oral, and valid rules and regulations adopted under ORS 90.262 or 90.510 (6) embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises. "Rental agreement" includes a lease. A rental agreement shall be either a week-to-week tenancy, month-to-month tenancy or fixed term tenancy.

ORS § 90.100(36) (2011) (renumbered ORS 90.100(38), effective June 18, 2013. Or Laws 2013, ch. 443, § 1).

MEMORANDUM OPINION-7

Defendants first attack Plaintiff's standing, reasoning that by virtue of Debtors' un-objected-to exemption, even assuming the Second Claim has merit, it is no longer estate property but rather has re-vested in Debtors.

The Second Claim is for recovery of an allegedly illegal <u>fee</u>. Debtors, on the other hand, claimed the Oregon homestead exemption in a <u>security deposit</u>, presumably under the authority of <u>Sticka v. Casserino (In re Casserino)</u>, 379 F.3d 1069, 1074-1075 (9th Cir. 2004). The Lease, however, nowhere refers to a "security deposit." Of equal import, under the ORLTA, a "security deposit" and "fee" are mutually exclusive. ORS 90.100(39) (2011).[13] Thus, Debtors' exemption in a $5,000 "security deposit," does not preclude Plaintiff from recovering a $5,000 "fee."

Defendants next ask the Court to construe the Lease and Option as unambiguously recognizing the $5,000 as consideration for the purchase option, as opposed to a landlord's fee. In the alternative, even if what the $5,000 encompasses is ambiguous, they argue they've submitted sufficient uncontradicted extrinsic evidence to resolve the ambiguity in their favor. Plaintiff argues the Lease and Option are ambiguous, and, while proffering no extrinsic evidence himself, argues the evidence adduced by Defendants is insufficient to carry their summary judgment burden.

The Lease and Option are contracts, and as such are subject to ordinary rules of contract construction. <u>Koch v. Spann</u>, 193 Or. App. 608, 613, 92 P.3d 146, 149 (2004). A preliminary issue is whether the Lease and Option should be construed as a single document. The Lease in fact lists the Option, and at ¶ 15, the Option specifically references the Lease. "Where a written instrument refers in specific terms to another writing, the other writing is a part of the contract." <u>Hous. Auth. of Jackson Cnty. v. Gates</u>, 246 Or. App. 521, 525, 267 P.3d 169, 170 (2011) (internal quotation omitted). Even absent these provisions:

---

[13] ORS 90.100(39) (2011) (renumbered ORS 90.100(41), effective June 18, 2013, Or. Laws 2013, ch. 443, § 1), provides:

> "Security deposit" means a refundable payment or deposit of money, however designated, the primary function of which is to secure the performance of a rental agreement or any part of a rental agreement. "Security deposit" <u>does not include a fee</u>. (emphasis added).

MEMORANDUM OPINION-8

Under Oregon law, one document need not expressly incorporate the other by reference if the connection between them is unmistakable. Oregon courts have identified three factors that, when present together, demonstrate that multiple documents should be construed as a single contract: (1) the documents are made by the same parties; (2) the documents are executed at or about the same time*;* and (3) the documents are part of the same transaction.

Arnett v. Bank of Am. N.A., 874 F. Supp. 2d 1021, 1030 (D. Or. 2012) (internal citations and quotations omitted). The Lease and Option meet all three prongs. The Court will thus construe the two documents together.

Under Oregon law:

To resolve a dispute over the meaning of a contractual provision, this court first considers the text of the disputed provision in the context of the contract as a whole to determine whether the disputed provision is ambiguous. A contractual provision is ambiguous if its wording can, in context, reasonably be given more than one plausible interpretation. Whether a provision is ambiguous is a question of law, as is the meaning of an unambiguous provision. The court must, if possible, construe the contract so as to give effect to all of its provisions. If the meaning of the provision is clear from the text and context, then the analysis ends.[14] If the provision is ambiguous, the court moves to the second step of the analysis, which is to consider other [extrinsic] evidence of the parties' intent.

Williams v. RJ Reynolds Tobacco Co., 351 Or. 368, 379-380, 271 P.3d 103, 109 (2011) (internal citations and quotations omitted). If the ambiguity cannot be resolved by examining extrinsic evidence, the court resorts to maxims of construction. Yogman v. Parrott, 325 Or. 358, 364, 937 P.2d 1019, 1022 (1997).

The Court's task is to determine what the $5,000 represents.[15] Examining the text and context, the Lease refers to it as a "nonrefundable move in fee" which is part of the "total lease amount of ($29,000.00)." Ex. D-2 at p.3. It does not otherwise define it. Likewise, the Option refers to it variously as a

---

[14] In addition to the text and context, the court may consider extrinsic evidence of "the circumstances underlying the formation of . . . [the] contract" to determine if an ambiguity exists. Wood Park Terrace Apartments Ltd. v. Tri-Vest, LLC, 254 Or. App. 690, 693 n.3, 297 P.3d 494, 496 (2013); Malmquist, 2011 WL 3298900 at *5 (citing, Batzer Constr. v. Boyer, 204 Or. App. 309, 129 P.3d 773 (2006)) (emphasis added). Here, none of the parties rely on extrinsic evidence for this purpose. [Footnote added to original].

[15] There is no dispute the $5,000 referenced in both the Lease and Option refers to the same amount. That is, the parties agree there was no requirement to pay $5,000 under the Lease and an additional $5,000 under the Option.

MEMORANDUM OPINION-9

"nonrefundable fee," Ex. D-3 at p.1, and a "nonrefundable move in fee," Ex. D-3 at pp.2-3, and like the Lease, includes it in the "total lease of $29,000." Ex. D-3 at p.2. What then does the term "nonrefundable move in fee" signify in both documents? The Court believes ¶ 3 of the Option, Ex. D-3 at p.1, answers the question unambiguously. It states in relevant part: "As consideration for this Option to Purchase Agreement, the Buyer/Tenant/Grantee shall pay the Seller/Landlord/Grantor a nonrefundable fee of $5,000." This clearly reflects the parties' intent that the $5,000 represents the consideration given by Debtors for the option to purchase the Fleetwood. Even assuming arguendo, the Lease and Option conflict on this issue, ¶ 15 of the Option resolves any ambiguity in Defendants' favor. It provides that "[i]n the event a conflict arises between the terms and conditions of the Lease Agreement and the Option to Purchase Agreement, the Option to Purchase Agreement . . . shall control." Ex. D-3 at p.4.

Finally, even were the Court to conclude the term "nonrefundable move in fee" is in fact ambiguous, the extrinsic evidence proffered, Yogman, 325 Or. at 363–364, 937 P.2d at 1022, in all material respects supports a finding the parties intended the $5,000 as the consideration paid for the right to purchase the Fleetwood.[16] See Kearney Declaration and exhibits thereto.[17]

---

[16] Even when a contractual term is ambiguous, the court may grant summary judgment if the movant adduces significantly probative extrinsic evidence of the parties' intent, and the nonmovant neither produces nor points to, any competing extrinsic evidence supporting resolution of the ambiguity in the nonmovant's favor. Dial Temp. Help Serv., Inc. v. DLF Int'l, Inc., 255 Or. App. 609, 612, 298 P.3d 1234, 1236 (2013).

[17] None of the parties have pled or argued the applicability of ORS Ch. 72A. That chapter allows evidence as to "course of dealing," "usage of trade," and "course of performance" (collectively, **the UCC factors**), see ORS 71.3030(1)-(3) (defining same), to explain the terms of certain leases. ORS 72A.2020(1); ORS 71.3030(4).

Chapter 72A complements, rather than supersedes, Oregon's consumer protection statutes. ORS 72.1040(1)(c), (2). It applies to any transaction that creates a "lease." ORS 72A.1020. "Lease" means "a transfer of the right to possession and use of goods for a term in return for consideration." ORS 72A.1030(1)(j). "Goods" in relevant part, means "all things that are movable at the time of identification to the lease contract." ORS 72A.1030(1)(h). Assuming the Fleetwood constituted "goods," see ORS 79.0102(1)(qq)(A),(B)(v) (defining "goods" within the Article 9 context, to include "manufactured structure"); ORS 79.0102(1)(zz)(incorporating definition of "manufactured structure" set forth in ORS 446.561), the Court may consider the UCC factors, along with text and context, in the first level of its

(continued...)

MEMORANDUM OPINION-10

1  The next step in the analysis is to determine whether charging $5,000 for the right to purchase the
2  Fleetwood, is an illegal "fee" under ORS 90.302(1). In that regard, it is apparent the $5,000 is not being
3  charged by a "landlord" in a "rental agreement," see ORS 90.100(22), (36) (2011), but rather by an optionor
4  in an option contract. In fact, the $5,000 has nothing to do with the "dwelling unit['s]" "use and occupancy,"
5  see ORS 90.100(36) (2011), but rather, concerns the right to purchase it. Put another way, if the Option
6  didn't exist, neither would the nonrefundable move in fee. The $5,000 is therefore not a "fee" within the
7  contemplation of ORS 90.302(1). Summary judgment in Defendants' favor on the Second Claim is thus
8  appropriate.

Counterclaim:

Defendants seek summary judgment on the Counterclaim for attorney fees incurred in defending against the Second and Third Claims. They rely both on the attorney fee clause in the Lease, and on ORS 90.255.

ORS 90.255 provides:

> In any action on a rental agreement or arising under this chapter, reasonable attorney fees at trial and on appeal may be awarded to the prevailing party together with costs and necessary disbursements, notwithstanding any agreement to the contrary. As used in this section, "prevailing party" means the party in whose favor final judgment is rendered. (emphasis added).

Both the Second and Third Claims are brought under ORLTA. As such, the Court need not consider an award of fees under the Lease's attorney fee clause because ORS 90.255 subsumes the field. LeBrun v. Cal-Am Prop., Inc., 197 Or. App. 177, 183-184, 106 P.3d 647, 652 (2005). The statute allows fees to the "prevailing party." Because Plaintiff has dismissed the Third Claim, Defendants are the prevailing parties thereon. Brennan v. La Tourelle Apartments, 184 Or. App. 235, 244-245, 56 P.3d 423, 428-429 (2002). Likewise, grant of summary judgment on the Second Claim makes Defendants prevailing parties as to it.

---

[17](...continued)
analysis. Peace River Seed Co-Operative, Ltd. v. Proseeds Marketing, Inc., 355 Or. 44, 67, 322 P.3d 531, 544 (2014). Here, all evidence of the UCC factors is either neutral as to, or supports, the Court's conclusion that the $5,000 unambiguously represents the consideration paid for the right to purchase the Fleetwood.

MEMORANDUM OPINION-11

However, an award of fees under the statute is discretionary. <u>Barbara Parmenter Living Trust v. Lemon</u>, 345 Or. 334, 339-341, 194 P.3d 796, 799-800 (2008). In determining <u>whether</u> to award fees under ORS 90.255, the court must consider the factors set forth in ORS 20.075(1).[18] <u>Id.</u> Here, there is an insufficient record to determine if an attorney fee award is merited under the applicable statutes. Summary judgment on the Counterclaim is thus inappropriate.

<u>Conclusion</u>:

The Court will grant Defendants' motion as to the Second Claim. It will delay entering formal judgment thereon until the First Claim is resolved. The Court will deny Defendants' motion as to the Counterclaim. However, it will enter an order that for purposes of ORS 90.255 and the Counterclaim, Defendants are the prevailing parties on the Second and Third Claims. Determination of whether and, if so,

---

[18] ORS 20.075(1) provides:

> (1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:
>
> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

MEMORANDUM OPINION-12

how much attorney fees will be awarded will be made pursuant to Defendants' application under LBR 9021-1(c) following the First Claim's resolution.

This Opinion constitutes the Court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated. An Order consistent herewith shall be entered.

THOMAS M. RENN
Bankruptcy Judge

MEMORANDUM OPINION-13